IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **JEFFREY BARON,** | § | |
| | § | |
| Appellant, | § | |
| | § | |
| v. | § | Civil Action No. **3:13-CV-3461-L** |
| | § | |
| **ELIZABETH SCHURIG,** *et al.*, | § | |
| | § | |
| Appellees. | § | |

<u>**AMENDED MEMORANDUM OPINION AND ORDER**</u>

On December 31, 2013, the court issued its Memorandum Opinion and Order in this appeal. Upon further review, the court noticed that the opinion contained several incorrect citations to applicable statutes, did not include a provision directing the taxation of all allowable and reasonable costs of the appeal against Appellees, and did not include a provision directing the clerk of the court to prepare, sign, and enter the judgment in this case.  To correct these oversights, the court **vacates** the Memorandum Opinion and Order entered on December 31, 2013, and **issues** this Amended Memorandum Opinion and Order in its place for the previously stated reasons. In all other respects, the Amended Memorandum Opinion and Order is identical to that issued on December 31, 2013.

Before the court is Appellant Jeffrey Baron's appeal of the bankruptcy court's June 26, 2013 Order For Relief in an Involuntary Bankruptcy Case ("Order for Relief").[1]  Also before the court is

---

[1] Jeffrey Baron states in his appellate brief that he is appealing the bankruptcy court's partial summary judgment order as well as the Order for Relief; however, the notice of appeal is limited to the Order for Relief.  The court therefore considers only the Order for Relief, which in any event is dispositive of the issues raised by the parties regarding the involuntary bankruptcy proceeding.

**Amended Memorandum Opinion and Order - Page 1**

Intervenor Appellants Novo Point LLC's and Quantec LLC's appeal of the Order for Relief.[2]  After careful consideration of the briefs, the record on appeal, and the applicable law, the court **reverses** the bankruptcy court's Order for Relief and **remands** this case to the bankruptcy court for the limited purpose of dismissing the involuntary bankruptcy case and consideration of whether attorney's fees, costs, or damages should be awarded under 11 U.S.C. § 303(i).

## I.      Procedural and Factual Background

### A.      Order for Relief Entered in Involuntary Bankruptcy Proceeding Against Baron

This appeal arises from the Order for Relief entered by the bankruptcy court on June 26, 2013, in the involuntary Chapter 7 bankruptcy proceeding, Case No. 12-37921-SGJ-7, that was brought against Appellant Jeffrey Baron ("Baron") by eight of his former attorneys ("Former Attorneys" or "Petitioning Creditors"), who claim they are entitled to compensation for legal services performed on behalf of Baron or entities owned by him.  According to the Order for Relief, the eight Petitioning Creditors in the involuntary bankruptcy include:

> Pronske & Patel, P.C. (alleging a $294,033.77 claim); Shurig Jetel Beckett Tackett (alleging a $93,731.79 claim); Dean Ferguson (alleging a $73,885 claim); Gary G. Lyon (alleging a $75,922.22 claim); Robert J. Garrey (alleging a $52,275 claim); Powers Taylor, LLP (alleging a $78,058.50 claim); Jeffrey Hall (alleging a $5,000 claim); and, later by joinder, David L. Pacione of the law firm of Brian J. Judis (alleging a $10,018.30 claim).

Order for Relief 3-4.  The claims of the eight Petitioning Creditors total $682,924.58.  *Id*. at 4.

---

[2] The court refers collectively to Baron, Novo Point LLC and Quantec LLC as "Appellants."  Like Appellant Jeffrey Baron, Novo Point LLC and Quantec LLC also indicate in their briefing that they are appealing matters other than the Order for Relief.  The court, however, as explained in the previous footnote,  considers only the Order for Relief, as it is dispositive of all issues regarding the involuntary bankruptcy.

**B.**     **Netsphere and Ondova Litigations and Establishment of a Receivership**

The Former Attorneys originally sought to recover their attorney's fees in a case filed on May 28, 2009, by Plaintiffs Netsphere, Inc.; Manila Industries Inc.; and Munish Krishan ("Plaintiffs") against Jeffrey Baron and Baron's company Ondova Limited Company ("Ondova") to enforce a prior settlement agreement or Memorandum of Understanding ("MOU") that was supposed to resolve the parties' dispute regarding the ownership of certain internet domain names ("*Netsphere* action").   On July 24, 2009, shortly after the *Netsphere* action commenced, Baron initiated a Chapter 11 bankruptcy proceeding on behalf of his company Ondova ("*Ondova* bankruptcy"), Case No. 09-34784-sgj11, to avoid a scheduled contempt hearing in the *Netsphere* action pertaining to an injunction entered by former Senior United States District Judge Royal Furgeson ("Judge Furgeson").

All but one of the eight Petitioning Creditors' claims in the involuntary bankruptcy are based on a fee order entered by Judge Furgeson on May 18, 2011 ("May 18, 2011 Fee Order") in the *Netsphere* action.   The remaining Petitioning Creditor's claim (Pronske & Patel, P.C.) is based on an order entered in the *Ondova* bankruptcy.   Pronske & Patel, P.C.'s ("Pronske & Patel") claim for fees, however, was first asserted in the *Netsphere* litigation and addressed in the May 18, 2011 Fee Order.   None of the Petitioning Creditors were parties to the *Netsphere* action or sought to intervene in the action.   They instead appeared in the case as "Movants," "Claimants," or for purposes of "Notice Only."   *See* Docket, Case No. 3:09-CV-988-L.

On November 24, 2010, in response to the bankruptcy court's concern that the hiring and firing of lawyers by Baron was exposing the Ondova bankruptcy estate to great expense, the district court in the *Netsphere* action established a receivership over assets ("Receivership Order") that

included Baron's personal property and assets of the companies he was believed to own or control, including assets of Novo Point, LLC and Quantec, LLC, which were listed as parties to a global settlement in the *Netsphere* action but were never listed as parties to that litigation or the *Ondova* bankruptcy.  As noted herein, the Receivership Order and establishment of the receivership gave rise to a flurry of litigation and appeals that have lasted a number of years and ultimately transformed the *Netsphere* litigation into a seemingly unending dispute and colossal morass between Baron and his Former Attorneys over attorney's fees.

### C.    May 18, 2011 Fee Order (Basis for Order for Relief)

Several months after the receivership was established, Judge Furgeson entered the May 18, 2011 Fee Order in an attempt to resolve the attorney's fees claims of approximately 22 law firms that previously represented Baron.  The May 18, 2011 Fee Order was entered in response to a motion by court-appointed receiver Peter S. Vogel ("Receiver") seeking the court's approval to disburse receivership funds to pay the Former Attorneys' contract claims for attorney's fees in accordance with the Receivership Order and the Receiver's proposal for resolving such claims.  Although the Receiver did not take part in any settlement discussions, his motion proposed a settlement and compromise of the Former Attorney claims that he believed would benefit Baron and the Former Attorneys.  In a section of the order titled "Findings Relating to Receiver's Fulfillment of His Duties," the district court concluded that the Receiver's actions and proposal were consistent with the Receivership Order and satisfied his fiduciary obligations to Baron.  May 18, 2011 Fee Order 2-5 (Doc. 575).

In support of his motion, the Receiver submitted declarations of 25 Former Attorney claimants.  According to the Receiver's calculations, the Former Attorneys' contract claims for

attorney's fees totaled approximately $1.4 million.  Of this amount, the Receiver proposed that $870,237.19 be paid from receivership funds. The Receiver's proposal and recommendation took into account a $400 per hour rate cap as instructed by the district court.  The May 18, 2011 Fee Order ordered the Receiver to pay the Former Attorneys referenced in the order from the receivership funds "once the Receiver has obtained cash to pay the Former Attorney Claims." May 18, 2011 Fee Order 6 (Doc. 575) (footnote omitted).

In approving the Receiver's proposed compromise, the district court acknowledged in the May 18, 2011 Fee Order that it was unaware of any precedent establishing standards for approving a compromise of contract claims in a federal receivership.  The district court also recognized that the proposed compromise did not address the Former Attorneys' claims for punitive damages or Baron's opposition to the fee requests based on malpractice and other grounds. The district court nevertheless determined that the Receiver's proposed compromise was "reasonable" because it benefited Baron and his Former Attorneys.  According to district court, the compromise would resolve the numerous Former Attorney claims and save Baron from the complexity and expense of litigating claims that he was likely to lose.  Even if Baron were to succeed, the district court believed that he would likely incur significant expenses in litigating the claims and that the proposed compromise, calculated using the fee cap, would be less than the trial expenses Baron might have to pay if the claims were litigated.

### D.       Appeal and Reversal of the Receivership Order and Related Matters

Numerous appeals to the Fifth Circuit were taken regarding the receivership and related orders that were entered in the *Netsphere* action and *Ondova* bankruptcy, including the May 18, 2011 Fee Order, which was appealed by Baron and Carrington, Coleman, Sloman & Blumenthal, L.L.P.

("CCSB"). CCSB represented Baron and Ondova in the *Ondova* bankruptcy proceedings and claimed it is owed $224,232.69 in unpaid fees. The Receiver recommended and the district court agreed in the May 18, 2011 Fee Order that none of the requested claim by CCSB be paid from the receivership funds because the trustee for the Ondova estate had advised the Receiver that the claim would be paid through the Ondova bankruptcy estate.  On appeal, CCSB contended that Baron's appeal of the May 18, 2011 Fee Order should be dismissed for lack of jurisdiction because it had filed a motion for reconsideration with the district court that remained pending in the district court.

These and the other matters appealed were resolved by the Fifth Circuit in an opinion entered on December 18, 2012.  *Netsphere, Inc. v. Baron*, 703 F.3d 296 (5th Cir. 2012).  Regarding the appeal of the May 18, 2011 Fee Order, the Fifth Circuit agreed with CCSB that it should be dismissed in light of the pending motion for reconsideration.  *Id.* at 305 n.1 (citing *Ross v. Marshall*, 426 F.3d 745, 752 n.13 (5th Cir. 2005)).  With respect to the Receivership Order, the Fifth Circuit held that the appointment of a receiver was improper and an abuse of discretion.  *Id.* at 302, 310-11, 315.  The Fifth Circuit explained that the district court did not have authority or jurisdiction to "[e]stablish[] a receivership to secure a pool of assets to pay Baron's former attorneys" because, "[a]lthough the attorneys' allegations and claims were delaying the district court and bankruptcy proceedings, they were not the subject matter of the underlying litigation." *Id.* at 308-10.  The Fifth Circuit also noted that the Former Attorneys were "unsecured contract creditors" and "for those unpaid attorneys who had filed claims, the claims had not been reduced to judgment" and thus the more appropriate recourse for the Former Attorneys was to make a claim against the Ondova bankruptcy estate or file suit in a court of appropriate jurisdiction to collect the fees owed if they represented Baron in matters unrelated to the *Ondova* bankruptcy. *Id.* at 308.

In reversing the Receivership Order, the Fifth Circuit directed the district court "to vacate the receivership and discharge the receiver, his attorneys and employees."   *Id.* at 315.   No fees or expenses other than those incurred by the Receiver were authorized by the Fifth Circuit, and the payment of the Receiver's fees expenses was to be limited to the $1.6 million in cash remaining in the receivership.   Any fees or expenses exceeding that amount would go unpaid. The Fifth Circuit instructed that all other assets in the receivership were to be "expeditiously released to Baron under a schedule to be determined by the district court for winding up the receivership." *Id.* at 313-14. The Fifth Circuit also made clear that  "[n]o further sales of domain names or other assets [were] authorized," and that the stay imposed as to the closing on sales resulting from an auction of domain names was "permanent." *Id.* at 314 n.2.

While the receivership was held to be improper, the Fifth Circuit determined that "Baron's own actions resulted in more work and more fees for the receiver and his attorneys." *Id.* at 313.  The Fifth Circuit therefore concluded that "charging the current receivership fund for reasonable receivership expenses, without allowing any additional assets to be sold, is an equitable solution." *Id.* at 313.  In light of its holding that the receivership was improper, the Fifth Circuit determined that it was not necessary for it to address specifically the numerous other outstanding motions that were carried with the case, as such matters were resolved by the court's holding and reversal of the Receivership Order.  *Id.* at 314-15.

### E.   Fifth Circuit's Order of Clarification

On December 31, 2012, the Fifth Circuit issued an order of clarification ("Order of Clarification") regarding its December 18, 2012 opinion and holding in response to requests for clarification by the Receiver, Baron, Novo Point, and Quantec.  In the Order of Clarification, the

Fifth Circuit stated: "The district court orders that were in place prior to the release of our opinion remain in place." *Netsphere* Order, Case No. 1011202 (Doc. 1130-1).  Because of the importance that the Petitioning Creditors and the bankruptcy court have attributed to this particular sentence, the court sets forth below Fifth Circuit's Order of Clarification in its entirety to put the sentence in context:

IT IS ORDERED that the opposed motion of Appellee Peter S. Vogel for clarification of this Court's November 9, 2012 order is GRANTED.  As stated in Federal Rule of Appellate Procedure 41, the mandate that signifies the finality of the Court's decision is not in the usual course issued with the opinion. Instead, it issues later under the varying circumstances set out in the Rule. The December 18, 2012 decision of the Court is at this time still subject to alteration by the panel or by the en banc court, and consequently it is not final. The district court orders that were in place prior to the release of our opinion remain in place. Upon the issuance of the mandate by this Court, the conclusions of our opinion become final and the district court and parties may rely on the rulings it contains.

We point out that our opinion did not dissolve the receivership immediately. We ordered a remand for an expeditious winding up of the receivership. No assets that were brought under the control of the receiver will be released immediately from that control even when the mandate is issued. The district court will thereafter have the authority to manage the process for ending the receivership as quickly as possible.

If no rehearing is requested by any party, and absent any hold on the mandate requested by a member of the en banc court, the mandate will issue immediately after the expiration of the period to file for rehearing on January 2, 2013. A further order of this Court will be entered signifying whether the mandate in fact issues on that date.

The Receiver has requested that we explain whether it is proper for further fees and expenses to be paid. As we said in the opinion and as the Receiver acknowledges, all fees and expenses need to be re-evaluated in light of our holding that the Receivership should not have been created. That conclusion neither authorizes nor prevents further necessary disbursements. The import of our order of November 9, 2012, has not changed, which said this: "Disbursement of any other assets of the Receivership should be as limited as possible until this Court resolves the appeals." We have resolved the appeals, but the only expenditures should be those appropriate for the Receiver to make until relinquishment of control of assets. It is for the district court to make the initial determination of whether approval of

**Amended Memorandum Opinion and Order - Page 8**

additional fees and expenses is appropriate at this time in light of the re-evaluation of all fees and expenses of the Receivership.

IT IS FURTHER ORDERED that the opposed motion of Appellee Peter S. Vogel to clarify the status of the mandate is DENIED to the extent any clarification beyond what we have just given was requested.

Baron filed a motion to clarify who is to take custody of the receivership assets upon the dissolution of the receivership. The opinion stated that everything subject to the receivership other than cash "should be expeditiously returned to Baron under a schedule to be determined by the district court for winding up the receivership." Our utilization of a shorthand reference to Baron did not in any way affect the ownership of assets that were brought into the receivership. Assets are to be returned as appropriate to Baron or other entities that were subject to the receivership.

Baron requests we clarify that he is not the principal beneficiary of Novo Point, LLC and Quantec, LLC. Such clarification is irrelevant to our holding and is DENIED.

IT IS FURTHER ORDERED that the alternative motion filed by Appellants Jeffrey Baron; Novo Point, LLC; Quantec, LLC; and Gary Schepps to clarify that this Court's opinion of December 18, 2012, was issued "as and for the mandate" is DENIED.

IT IS FURTHER ORDERED that the alternative motions filed by Appellants Jeffrey Baron; Novo Point, LLC; Quantec, LLC; and Gary Schepps for a stay of the injunctions contained in the district court's order appointing the receiver dated November 24, 2010, is DENIED.

*Id.*

To complicate matters, Baron's Former Attorneys filed the involuntary bankruptcy proceeding against him under Chapter 7 of the bankruptcy code within hours of the issuance of the Fifth Circuit's December 18, 2012 opinion. As a result of the involuntary bankruptcy proceeding, the bankruptcy court determined that the filing of the involuntary bankruptcy petition created an automatic stay of the actions that had been commenced against Baron. The automatic stay was lifted in part to allow the motions for rehearing en banc filed with the Fifth Circuit and related briefing to

proceed.  The automatic stay was also lifted to allow the district court to enter orders to permit usage of receivership assets to pay expenses associated with preserving domain names.  In addition, although the bankruptcy court believed that the receivership assets were property of the bankruptcy estate and subject to turn over under section 543 of the bankruptcy code, the bankruptcy court excused the Receiver from immediately turning over receivership assets to the bankruptcy trustee because it was unclear to the court at the time what the status of the Receiver and receivership was in the light of the rehearing activity.  It was also unclear whether an order for relief under section 303(b) of the bankruptcy code should or would ultimately be entered allowing the involuntary bankruptcy case to proceed.  Report in Support of Order for Relief 14.  On April 4, 2013, the petitions for rehearing were denied by the Fifth Circuit, and, on April 19, 2013, the Fifth Circuit entered judgments and mandates for the various appeals, reversing the Receivership Order and remanding the case to the district court for further proceedings consistent with its December 18, 2012 opinion.

### F.       Determination that Former Attorneys have Standing to Pursue Bankruptcy

On June 26, 2013, the bankruptcy court issued findings of fact and conclusions of law in support of its Order for Relief ("Report") that is the subject of this appeal.[3]  In its Report, the bankruptcy court acknowledged that the Fifth Circuit's reversed the Receivership Order and issued related mandates but concluded that Baron's former attorneys have standing under 11 U.S.C. § 303(b) of the bankruptcy code to file and proceed with the involuntary bankruptcy case against him,

---

[3] The Order for Relief was preceded by earlier orders of the bankruptcy court denying Baron's motion to dismiss the involuntary bankruptcy and granting the Petitioning Creditors' motion for partial summary judgment. An interlocutory appeal of the order granting the Petitioning Creditors' motion for partial summary judgment was taken by Baron on May 7, 2013, pursuant to Rule 8003(c) of the bankruptcy code.  The appeal was dismissed by this court in Case No. 3:13-CV-1746-L, on August 6, 2013, without reaching the merits, after determining that the requirements for interlocutory appeals under Rule 8003(c) and section 28 U.S.C. § 1292(b) had not been satisfied.

**Amended Memorandum Opinion and Order - Page 10**

based on the May 18, 2011 Fee Order.  According to the bankruptcy court, the May 18, 2011 Fee

Order is "tantamount to a final judgment that forecloses an argument of a bona fide dispute." *Id*. at

24.  The bankruptcy court determined that the May 18, 2011 Fee Order is akin to a final judgment

despite the Fifth Circuit's December 18, 2012 holding that the receivership was improper because

the opinion does not specifically address, overturn or set aside the May 18, 2011 Fee Order, and

appeals of that order have been exhausted.  The Petitioning Creditors and Trustee advocated, and the

bankruptcy court agreed, that the following statement in the Fifth Circuit's December 31, 2013 Order

of Clarification further supports the conclusion that the May 18, 2011 Fee Order survived the Fifth

Circuit's reversal of the Receivership Order: "The district court orders that were in place prior to the

release of our opinion remain in place." *Id*. at 19.

### G.      Bankruptcy Court Recommends Turnover of Receivership Assets to Trustee

One month later, on July 29, 2013, the bankruptcy court issued a *Sua Sponte* Report and

Recommendation to the District Court Proposing Disposition of Assets Held in the Overruled

Receivership of Jeffrey Baron, in Accordance with Section 541-543 of the Bankruptcy Code (Doc.

1304-1) ("*Sua Sponte* Report").  In the *Sua Sponte* Report, the bankruptcy court recommended that

the Receiver be required to turnover receivership assets to the bankruptcy trustee in the involuntary

bankruptcy case pursuant to section 543 of the bankruptcy code.  In the *Sua Sponte* Report, the

bankruptcy court noted the following with regard to section 543:

> Ordinarily, upon the commencement of a Chapter 7 bankruptcy case: (a) a debtor has the
> duty to cooperate with a bankruptcy trustee and, among other things, turn over his or her
> non-exempt assets for the trustee to administer (e.g., 11 U.S.C. §§ 521(3), 704(1), (2) &
> 541(a)(1)); (b) any custodian/receiver that was in place prior to the bankruptcy case also has
> the duty to deliver to the bankruptcy trustee any property of the debtor held by or transferred
> to such custodian, along with the proceeds or profits of such property, and provide an
> accounting to the bankruptcy trustee (e.g., 11 U.S.C. § 543(b)); and (c) other entities, other
> than a custodian, which may be in possession, custody, or control of property that the

bankruptcy trustee may use, sell or lease, or that the debtor may exempt, shall deliver such property to the bankruptcy trustee and account for such property (e.g., 11 U.S.C. § 542(a)). ***Thus, in a typical situation of a receivership predating a bankruptcy case, the protocol is clear: the receiver is superseded by a bankruptcy trustee and simply turns over the receivership assets to the bankruptcy trustee pursuant to Section 543 of the Bankruptcy Code***.

*Sua Sponte* Report 4-5 (emphasis in original).  The bankruptcy court acknowledged that Fifth Circuit's December 18, 2012 holding that the receivership was improper and should be wound down pursuant to an order entered by the district court with all noncash assets returned to Baron or the entities from which they were received.  The bankruptcy court also noted that Baron and his affiliates had taken the position that certain assets that were part of the Receivership res, that is, the assets other than cash, were not Baron's property and therefore should not be delivered to his bankruptcy trustee.  The bankruptcy court, however, went on to conclude that the involuntary bankruptcy proceeding created an "intervening circumstance" that required the turnover of the receivership assets to the bankruptcy trustee in accordance with section 543 of the bankruptcy code.

### H.    Receiver's Motions to Wind Down and Turnover Receivership Assets

On October 3, 2013, the Receiver filed with this court a Motion for Authority to Immediately Comply with Mandate, for Wind Down Plan and Discharge, and for Payment Consistent with the May 29, 2013 Order of this Court (Doc. 1324).  On October 30, 2013, the Receiver filed another motion in the involuntary bankruptcy proceeding, requesting the bankruptcy court to issue an order requiring the Village Trust,[4] Novo Point, and Quantec "to appear and *show cause why the Receiver should, or should not be, ordered to immediately turn over the Domain Assets to the Bankruptcy Trustee.*"  Exh. A at 7-8 (emphasis added).

---

[4] The Village Trust is a Cook Islands entity that owns Novo Point and Quantec. *Netsphere*, 703 F.3d at 303. The trustee of the Village Trust "is SouthPac, which is also a Cook Islands entity, and Baron is the trust's sole beneficiary." *Id.*

**Amended Memorandum Opinion and Order - Page 12**

I.      **Emergency Relief Requested by Novo Point and Quantec**

In response to the Receiver's October 30, 2013 motion in the involuntary bankruptcy case,

Novo Point and Quantec filed a motion in the *Netsphere* action seeking an order: (1) requiring the

Receiver to terminate or withdraw his Expedited Motion for Immediate Entry of Show Cause Order

Why Receiver Should Not Turnover Certain Receivership Assets (The Novo Point and Quantec

Assets) in View of Recent Filings and Testimony; and (2) staying the bankruptcy hearing set for

November 19, 2013, on the Receiver's motion.  Alternatively, Novo Point and Quantec requested

this court to "[e]nter an order withdrawing the reference from the bankruptcy court as to the

disposition of the receivership assets of Novo Point[] and Quantec."  Novo Point's and Quantec's

Mot. 18.

The Receiver responded to Novo Point's and Quantec's emergency motion on November 13,

2013.  The Receiver's summarizes his response as follows:

> To the extent the Emergency Motion is properly presented by Novo Point and
> Quantec or its putative counsel, it fails in its premise (that there is a real or even
> potential jurisdictional conflict), and fails to disclose the scope and effect of that
> hearing. The hearing will address and resolve questions beyond the immediate
> possession of receivership assets and provide all parties, including Baron and his
> trusts' assets with an immediate right of de novo review. Thus, there is no lawful
> basis for this Court to enjoin the Bankruptcy Court from conducting a hearing as
> sought in this Emergency Motion.

Receiver's Resp. 9.  According to the Receiver, Novo Point's and Quantec's emergency motion

relates to their opposition and objection to the bankruptcy court's *Sua Sponte* Report that they were

denied due process when they were not notified or allowed to participate in the hearing that preceded

the Report. The Receiver contends that Novo Point's and Quantec's emergency motion and

opposition in this regard are premature and will be mooted by the November 19, 2013 show cause

hearing because they will have an opportunity at the hearing to explain why they believe it would

be improper for the bankruptcy court to order the Receiver to transfer or turnover to the bankruptcy trustee the Novo Point and Quantec assets currently under the Receiver's control.  The Receiver also maintains that Novo Point's and Quantec's emergency motion is premature because they will have an immediate right of de novo review after the hearing to any order entered by the court regarding the Receivership assets.

According to the Receiver, Novo Point's and Quantec's emergency motion is improper because it seeks, without any legal basis, to interfere with and prevent a core bankruptcy proceeding. The Receiver takes the position that an order by the bankruptcy court requiring the turnover of the Receivership assets seized from Novo Point and Quantec to the bankruptcy trustee, in accordance with the *Sua Sponte* Report, would be proper because "Novo Point and Quantec have already been adjudicated alter egos of the debtor Baron [by Judge Royal Furgeson] and may well be regarded as part of the Bankruptcy Estate for the same reason they were (and remain) part of the Receivership Estate."  *Id.* at 4.  The Receiver further asserts that there is no potential jurisdictional conflict regarding the bankruptcy court's exercise of jurisdiction over the Receivership assets because it is merely a unit or arm of the district court.

Because Novo Point's and Quantec's request to withdraw the reference was filed in this court rather than the bankruptcy court in accordance with Local Bankruptcy Rule 5011-1, the court, on November 15, 2013, referred to the bankruptcy court the request to withdraw the reference for findings and recommendation.  As a result, the hearing that was initially set for November 19, 2013 in the bankruptcy court on the Receiver's motion was extended to allow the bankruptcy court time to conduct a status conference and prepare findings and recommendations as to Novo Point's and Quantec's motion to withdraw the reference and to allow this court time to address the various

outstanding motions and any objections to the bankruptcy court's findings and recommendation on the motion to withdraw the reference. On November 22, 2013, the bankruptcy court held a status conference on the request to the withdraw the reference and issued related findings and recommendation on December 4, 2013, to which the parties have now had an opportunity to file objections. On December 12, 2013, Novo Point and Quantec also filed another Emergency Motion to Enforce the Jurisdiction of this Honorable Court and Order Vogel and his Counsel Not to Disburse any Receivership or Trust Assets to Themselves Without the Prior Order of this Court Directing such Disbursement and Ordering the Immediate Return of All Assets Already Disbursed in Contempt of this Court's Exclusive Jurisdiction Over the Receivership Property (Doc. 1346). The bankruptcy hearing on the Receiver's October 30, 2013 motion is currently set for January 2, 2014.

The "*Netsphere* action" and several appeals from the bankruptcy proceedings were reassigned to this court on June 3, 2013, after Judge Furgeson retired. The instant appeal was transferred to this court on December 18, 2013. On September 25, 2013, Novo Point LLC ("Novo Point") and Quantec LLC ("Quantec") requested and were granted leave to intervene in the instant appeal as Appellants. On September 18, 2013, the trustee in involuntary bankruptcy case, John H. Litzler ("Trustee"), was also permitted to intervene in the appeal as an Appellee. This memorandum opinion and order focuses on the appeal of the Order for Relief entered by the bankruptcy court in the involuntary bankruptcy case; however, the court's resolution of this appeal moots many of the other matters pending before the court pertaining to the receivership and involuntary bankruptcy proceeding. These matters will be addressed by separate order in the *Netsphere* action.

## II.     Standard of Review

In a bankruptcy appeal, district courts review bankruptcy court rulings and decisions under the same standards employed by federal courts of appeal:  a bankruptcy court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed *de novo*.  *See Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 701 (5th Cir. 2003); *Century Indem. Co. v. Nat'l Gypsum Co. Settlement Trust (In re Nat'l Gypsum Co.)*, 208 F.3d 498, 504 (5th Cir.), *cert denied*, 531 U.S. 871 (2000).  A bankruptcy court's "findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous." Fed. R. Bankr. P. 8013.  A finding is clearly erroneous and reversible only if, based on the entire evidence, the reviewing court is left "with the definite and firm conviction that a mistake has been made."  *In re Dennis*, 330 F.3d at 701 (citation omitted).  In conducting this review, the court must give due regard to the opportunity of the bankruptcy judge to determine the credibility of the witnesses.  *Id.*; *see also Young v. Nat'l Union Fire Ins. Co. (In re Young)*, 995 F.2d 547, 548 (5th Cir. 1993) (quoting Fed. R. Bankr. P. 8013).

## III.     Analysis

The instant appeal by Baron, Novo Point, and Quantec requires the court to determine whether entry of the Order for Relief was proper under section 303 of the bankruptcy code applicable to involuntary bankruptcy proceedings.  In other words, the court must determine whether Baron's Former Attorneys have standing under 11 U.S.C. § 303 of the bankruptcy code to file and proceed with the involuntary bankruptcy case against him.

### A.     Standard Applied by Bankruptcy Court and Basis for Order for Relief

In entering the Order for Relief, the bankruptcy court concluded that Baron should be a debtor in bankruptcy under Title 11.  In making this determination, the bankruptcy court further

reasonednoted as follows regarding the requirements of section 303 that pertain to involuntary bankruptcy petitions:

> Section 303(h) provides that, whenever an involuntary bankruptcy petition is filed and then timely controverted, the court, after a trial, shall order relief against the debtor in the involuntary case only if — (1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bonafide dispute as to liability or amount; or (2) within 120 days before the date of the filing of the petition, a custodian [which is defined in Section 101(11) of the Bankruptcy Code as, among other things, a receiver . . . of any of the property of the debtor, appointed in a case or proceeding not under this title], other than one appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien, was appointed or took possession. 11 U.S.C. § 303(h).

> Section 303(b) provides that an involuntary bankruptcy case may be commenced against a person "by three or more entities, each of which is . . . a holder of a claim against such person **that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount** . . . if such noncontingent, undisputed claims aggregate at least $15,325 in unsecured amount. Note, that if there are fewer than 12 creditors of an alleged debtor, only one petitioning creditor with this size noncontingent, undisputed claim is necessary to file an involuntary petition. 11 U.S.C. § 303(b).

Report in Supp. of Order for Relief 2 nn.1-2 (emphasis added and internal quotation marks omitted).

The bankruptcy court further reasoned, based on its 2009 opinion in *In re Henry S. Miller Commercial, LLC*, that "an unstayed judgment, even if on appeal, is not the subject of a bona fide dispute for purposes of Section 303(b) of the Bankruptcy Code":

> This court has held in the past in *In re Henry S. Miller Commercial, LLC*, 418 B.R. 912 (Bankr. N.D. Tex. 2009) that an unstayed judgment, even if on appeal, is not the subject of a bona fide dispute for purposes of Section 303(b) of the Bankruptcy Code. This court's and other courts' rationales for ruling this way has been that such a judgment would be an enforceable judgment, and an involuntary bankruptcy case ought to be allowed to be pursued as an enforcement remedy, same as any other collection remedy a judgment creditor may take on an unstayed judgment. In *Henry S. Miller*, this court cited, among other authority, the Fifth Circuit's *Sims* decision, which basically holds that a bankruptcy court should apply an objective standard in this context, and not go behind the judgment and try to

predict the judgment debtor's chances of success on appeal. *Subway Equip. Leasing Corp. v. Sims (In re Sims)*, 994 F.2d 210, 220-21 (5th Cir. 1993).

*Id.* at 21.  The bankruptcy court therefore concluded that "an appeal alone does not create a bona fide dispute" but also recognized, again based on *In re Henry S. Miller Commercial, LLC*, that a court "could conceivably be guided to make an exception to the general rule recognizing the finality/enforceability of an unstayed judgment" in cases involving "a highly specialized fact pattern."  *Id.* at 21-22.

In deciding the section 303(b) standing issue, the bankruptcy court considered: (1) whether the Petitioning Creditors have the equivalent of a final judgment, that is, whether the May 18, 2011 Fee Order constitutes a final judgment although not expressly titled a final judgment; (2) whether the Fee Order was unstayed and enforceable; and (3) even if the Fee Order is a final unstayed judgment, whether there exists a "highly specialized fact pattern" such that the court should find a bona fide dispute between Baron and his Former Attorneys "or at least find that the Orders were not dispositive on the issue."  *Id.* at 22.

As previously noted, the bankruptcy court ultimately concluded that the May 18, 2011 Fee Order constitutes a final unstayed judgment that forecloses the existence of a bona fide dispute between Baron and his Former Attorneys.  According to the bankruptcy court, although the May 18, 2011 Fee Order did not have the word "judgment" in its title and was issued in the context of a proposed compromise or settlement offered up by the Receiver did not preclude a finding that the order was a final judgment because "it was actually, fully litigated by the same parties here today." *Id.* at 24.  The bankruptcy court therefore agreed with the Petitioning Creditors that Baron was barred by collateral estoppel under Texas law from relitigating the May 18, 2011 Fee Order.  *Id.* at 24-25

(citing *Gupta v. E. Idaho Tumor Inst., Inc. (In re Gupta)*, 394 F.3d 347, 351 n.4 (5th Cir. 2004)). The bankruptcy court further reasoned that Baron's malpractice and other claims did not preclude the existence of a final judgment or application of collateral estoppel because: "The fact here that Judge Furgeson preserved Mr. Baron's ability to bring malpractice claims and the attorneys' rights to assert additional claims in the future does not take away from the finality of the order. It simply carved out what was or was not being litigated and adjudicated." *Id.* at 26.

The bankruptcy court also rejected Baron's contention that the May 18, 2011 Fee Order was stayed as a result of Judge Furgeson's June 18, 2012 "Order Regarding Motion to Clarify Instruction to Receiver on Payments to Former Baron Attorneys." Even though this order by Judge Furgeson directed the Receiver to not disperse any receivership assets to the Former Attorneys pending the various appeals to the Fifth Circuit, the bankruptcy court interpreted it as merely staying further administrative activity in the receivership action. The bankruptcy court acknowledged that it was a "close call" but did not believe that the district court's June 18, 2012 order was "tantamount to a stay pending appeal" because it was "simply an administrative order stating that Judge Furgeson did not want any disbursements made at that stage of the Receivership" and "did not have the effect of suggesting anything about the merits of the appeal – whether there might be a substantial question on the law in connection with the appeal of the [May 18, 2011 Fee] order that, in Judge Furgeson's vew at that time, might create a bona fide dispute." *Id.* at 26-27.

The bankruptcy court went on to note that the aforementioned issues were mooted because, although the Fifth Circuit held in its December 18, 2012 opinion that the receivership was improper, it did not address or set aside the May 18, 2011 Fee Order or the numerous other receivership orders appealed. *Id.* at 18, 27. The bankruptcy court therefore concluded that the May 18, 2011 Fee Order

remained valid despite the Fifth Circuit's reversal of the Receivership Order. The bankruptcy court reasoned that the ongoing validity of the May 18, 2011 Fee Order was further bolstered by the Fifth Circuit's statement in its December 31, 2012 Order of Clarification: "The district court orders that were in place prior to the release of our opinion remain in place." In addition, according to the bankruptcy court, this clarification was not affected or changed by the Fifth Circuit's subsequent denials of the petitions for rehearing en banc or mandates. *Id.* at 19. The bankruptcy court therefore concluded that the May 18, 2011 Fee Order established the claims of all of Baron's Former Attorneys, including the Petitioning Creditors, and that "no specialized circumstances [] warrant[ed] disregarding this [conclusion]." *Id*. at 27.

### B.     The Parties' Contentions

#### 1.     Appellants' Contentions (Baron, Novo Point, and Quantec)

Baron asserts that: (1) he was denied due process as a result of the involuntary bankruptcy proceeding; (2) his Seventh Amendment right to a jury trial was violated; (3) the Petitioning Creditors are collaterally estopped from contending that there is no bona fide dispute because, unlike CCSB's appeal of the May 18, 2011 Fee Order, his appeal was decided on the merits and resolved by the Fifth Circuit's December 18, 2012 order reversing the Receivership Order; and (4) the bankruptcy court's finding under section 303(h) that he was not paying his debts as they became due is erroneous.

Novo Point and Quantec contend that a bona fide dispute between Baron and the Petitioning Creditors exists because the May 18, 2011 Fee Order was stayed and, even if unstayed, the order is unenforceable against Baron in the involuntary bankruptcy proceeding because the district court lacked the authority to resolve the lawyers' fees disputes with Baron. Novo Point and Quantec

further assert that the bankruptcy court lacks constitutional authority to adjudicate creditors' state law contract claims against Baron.  Novo Point and Quantec also contend that certain findings by the bankruptcy court are erroneous.  Specifically, they maintain, contrary to the bankruptcy court's findings, that: (1) "The May 18, 2011 District Court Order did not find that '[Appellant] owed 22 law firms for legal services in the amount of $870,237.19'"; (2) "The Fifth Circuit discussed and separately ruled on the May 2011 Order to disburse fees to the former Baron attorneys"; (3) "The Fifth Circuit explicitly stated that any district court orders 'in place prior to the release of our opinion remain in place' but stated so only in reference to the period until the mandate issued"; (4) "Whether correct in his view, or not, Judge Furgeson's quote . . . was taken out of context and actually states [as follows:] 'The Fifth Circuit did not vacate the Orders authorizing the payment of fees to Receivership professionals'"; (5) "The district court did not find Baron liable for substantial contribution claims"; and (6) "No witness testified at the April 28, 2011 hearing and Baron did not invoke the Fifth Amendment. Moreover, Baron prevailed on the motion that was heard." Novo Point and Quantec Br. 19-25.

## 2.    Appellees' Contentions (Petitioning Creditors and Trustee)

Petitioning Creditors counter that they satisfied their burden of establishing the requirements of section 303 by a preponderance of the evidence and note that neither section 303(h) nor case law requires a petitioning creditor to hold a final judgment against the alleged debtor to satisfy section 303's standing requirements. More specifically, Petitioning Creditors contend that: (l) the Fifth Circuit's reversal of the Receivership Order does not affect their standing in the involuntary bankruptcy proceeding because the involuntary bankruptcy is not a continuation of the district court proceedings that established the receivership but instead constitutes a separate available remedy

under the bankruptcy code; (2) they have standing under 11 U.S.C. § 303(b)(1) because each of them is a holder of a claim against Baron that is not contingent as to liability or the subject of a bona fide dispute and although their claims are liquidated by the May 18, 2011 Fee Order, "the underlying legal basis for their claims is rooted in contract law, and the repayment of their claims [is] not contingent upon the [May 18, 2011 Fee Order] surviving on appeal"; (3) their claims are not subject to a bona fide dispute because the claims were fully adjudicated by the district court and the allowance of the claims in the May 18, 2011 Fee Order forecloses any bona fide dispute as to the fee claims; the May 18, 2011 Fee Order was not addressed on appeal by the Fifth Circuit or disturbed by its reversal of the Receivership Order; and the Fifth Circuit's Order of Clarification makes clear that the May 18, 2011 Fee Order was to remain in place notwithstanding the reversal of the Receivership Order; (4) Baron's due process and Seventh Amendment rights were not violated as a result of the involuntary bankruptcy proceeding; and (5) the bankruptcy court correctly applied claim and issue preclusion principles to the May 18, 2011 Fee Order. The Trustee filed a separate brief asserting essentially the same arguments as those of the Petitioning Creditors.

### C.    Discussion

For the reasons herein explained, the court determines that the May 18, 2011 Fee Order entered by Judge Furgeson cannot support the June 26, 2013 Order for Relief entered in the involuntary bankruptcy case, and that the Petitioning Creditors have not met their burden of satisfying the standing requirements under section 303 of the bankruptcy code. Petitioning Creditors assert that a final judgment is not a prerequisite to standing under section 303. This is a correct statement of law; however, the bankruptcy court's conclusion that no bona fide dispute exists regarding the fees claims is based entirely on her determination that Judge Furgeson's May 18, 2011

Fee Order constitutes an unstayed final judgment and therefore, as a matter of law, forecloses the existence of a bona fide dispute.  The bankruptcy court's Order for Relief does not consider whether, in the absence of an unstayed final judgment, there exists a bona fide dispute as to liability or amount.  This is perhaps because there is some evidence in the record to support a finding that a bona fide dispute exists, at least with regard to the *amount* of the fee claims.  While Petitioning Creditors focus at length on the issue of whether their fee claims are contingent *as to liability* or the subject of a bona fide dispute *as to liability*, they gloss over the additional requirement that there must also be no bona fide dispute as to the *amount* of a claim.  11 U.S.C. § 303(b) (providing that an involuntary bankruptcy case may be commenced against a person if the holder of a claim against such person "is not contingent as to liability or the subject of a bona fide dispute as to *liability or amount*.") (emphasis added).[5]

Further, while the bankruptcy code may afford petitioning creditors remedies different from those available in a federal nonbankruptcy civil action, the court disagrees that Petitioning Creditors' standing in the involuntary bankruptcy case is unaffected by the Fifth Circuit's December 18, 2012 holding and reversal of the Receivership Order.  For this court to conclude otherwise would require it to circumvent and ignore the Fifth Circuit's holding (and mandates) that the district court could not establish and use the receivership to pay Baron's Former Attorneys.  This, however, is exactly what Petitioning Creditors are advocating in the involuntary bankruptcy – that their fees be paid from

---

[5] As noted by Judge Jernigan in *In re Henry S. Miller Commercial, LLC*, "The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 . . . amended Section 303(b)(1) of the Bankruptcy Code to add the words 'as to liability or amount' after the words 'bona fide dispute,' so that now the petitioning creditors' claims must not be the 'subject of a bona fide dispute *as to liability or amount*.'"  *In re Henry S. Miller*, 418 B.R. at 920 n.1 (quoting 11 U.S.C. § 303(b)(1)) (emphasis provided by Judge Jernigan).

**Amended Memorandum Opinion and Order - Page 23**

the receivership assets pursuant to the May 11, 2011 Fee Order that was entered by Judge Furgeson

based on the improper Receivership Order.

As the Fifth Circuit has issued its mandates, the relief that Petitioning Creditors seek is

foreclosed by the mandate rule.  This rule is aptly summarized as follows:

> The *mandate rule*, which is a corollary or specific application of the law of
> the case doctrine, prohibits a district court on remand from reexamining an issue of
> law or fact previously decided on appeal and not resubmitted to the trial court on
> remand.  The prohibition covers issues decided both expressly and by necessary
> implication, and reflects the jurisprudential policy that once an issue is litigated and
> decided, that should be the end of the matter.  This rule is essential to the orderly
> administration of justice, as it is aimed at preventing obstinate litigants from
> repeatedly reasserting the same arguments and at discouraging opportunistic litigants
> from appealing repeatedly in the hope of acquiring a more favorable appellate panel.

*United States v. Pineiro*, 470 F.3d 200, 205 (5th Cir. 2006) (footnotes, citations, and internal

quotation marks omitted).  More to the point, "[t]he mandate rule requires a district court on remand

to effect our mandate and to do nothing else."  *General Universal Sys., Inc. v. Hal, Inc.*, 500 F.3d

444, 453 (5th Cir. 2007) (citations omitted).   The court has neither the inclination nor effrontery to

disregard this well-settled precedent.

Although the Fifth Circuit did not address the merits of May 18, 2011 Fee Order appeal due

to its determination that a pending motion for reconsideration by CCSB deprived it of jurisdiction,

the fate and validity of the May 18, 2011 Fee Order are necessarily tied to that of the Receivership

Order because the Fee Order is expressly based on the Receivership Order and the establishment of

the receivership, which were held to be improper.  Because the district court lacked authority and

jurisdiction to establish the receivership to secure a pool of assets to pay Baron's Former Attorneys,

it also lacked jurisdiction to enter the May 18, 2011 Fee Order, based on the Receivership Order,

since the Former Attorney claims were not the subject of the underlying litigation.  *See Netsphere,*

*Inc.*, 703 F.3d at 308-10 ("explaining that the district court lacked authority to "[e]stablish[] a receivership to secure a pool of assets to pay Baron's former attorneys" because "[a]lthough the attorneys' allegations and claims were delaying the district court and bankruptcy proceedings, they were not the subject matter of the underlying litigation.").

The court also questions whether the district court had jurisdiction over the Petitioning Creditors since they were not parties to and did not intervene in the *Netsphere* action.  A judgment is void if the court that rendered it lacked jurisdiction over the subject matter or the parties.  *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 143 (5th Cir. 1996). Accordingly, the court concludes that even if the May 18, 2011 Fee Order, which is based on the improper Receivership Order, constitutes a judgment, it is void and unenforceable against Baron because the district court lacked jurisdiction over the subject matter of the order and the parties affected by the order.  *See id.*  The court also notes that Judge Furgeson acknowledged, after reversal of the Receivership Order, that the district court lacked jurisdiction over the Former Attorney claims.  For this reason, he denied the proposed settlement of such claims by Baron and the Former Attorneys, as it attempted to circumvent the Fifth Circuit's December 18, 2012 holding.  Order Denying Joint Mot. by Jeffrey Baron and Former Lawyers for Entry of Wind Down Plan and for Expedited Hearing Thereon 2 (Doc. 1286), entered on May 28, 2013 ("There is no independent federal jurisdiction over these claims."). Thus, in light of the Fifth Circuit's holding regarding the receivership, the May 18, 2011 Fee Order directing the Receiver to pay the fee claims of Baron's Former Attorneys from receivership assets cannot support an award of attorney's fees to Baron's Former Attorneys, whether in the *Netsphere* action or the involuntary bankruptcy proceeding, because the Fee Order derived its existence from the creation of the receivership and Receivership Order and therefore cannot exist separate and apart from them.

To avoid any ongoing confusion and to-and-fro regarding the validity of the May 18, 2011 Fee Order, the court **vacates** this order.[6]

Moreover, the court's conclusion the May 18, 2011 Fee Order did not survive the reversal of the Receivership Order is not affected by the Fifth Circuit's Order of Clarification and statement that all district court orders in place prior to the December 18, 2012 opinion shall remain in place. When read in the context of the *entire* Order of Clarification, rather than in isolation, *it is clear that this statement was intended merely to convey that immediate action in accordance with the Fifth Circuit's December 18, 2012 opinion and instructions on remand was not necessary; rather, the status quo as to all district court orders, including the reversed Receivership Order, would continue during the interim period until the mandates issued.*

The court also disagrees that the May 18, 2011 Fee Order qualifies as an unstayed final judgment as to the Former Attorneys' claims.  Various orders entered by Judge Furgeson in the *Netsphere* action reflect that the May 18, 2011 Fee Order and other matters pertaining to the appealed receivership were in fact stayed pending appeal to the Fifth Circuit.  *See* Order Regarding Baron's Notice of Appeal to the United States Court of Appeals for the Fifth Circuit (Doc. 586), entered on May 24, 2011 ("Having consulted with the Clerk of the U.S. Court of Appeals for the Fifth Circuit, the Court advises the parties that it is STAYED from taking further action in the

---

[6] The court concludes that vacatur of the May 18, 2011 Fee Order is appropriate in light of the Fifth Circuit's December 18, 2012 reversal of the Receivership Order even though the appeal of the Fee Order was dismissed for lack of jurisdiction. Petitioning Creditors, however, contend, based on *Chemetron Corporation v. Business Funds, Incorporated,* 682 F.2d 1149 (5th Cir. 1982), *vacated and remanded on other grounds,* 460 U.S. 1007 (1983), that an appealed unstayed judgment has preclusive effect as to the issues actually decided by the court, even if the judgment is subsequently vacated by the issuing court.  *Chemtron,* however, is distinguishable because there was no issue as to whether the district court in that case had authority or jurisdiction to enter the findings and conclusions that it later set aside after the case settled.  Moreover, as herein explained, the court concludes based on the docket and record in the *Netsphere* action that the May 18, 2011 Fee Order was stayed by Judge Furgeson pending the numerous appeals to the Fifth Circuit regarding the receivership.

**Amended Memorandum Opinion and Order - Page 26**

various matters involved in the instant appeal," including the appeal of Doc. 575 – the May 18, 2011 Fee Order); Advisory (Doc. 630), entered on July 1, 2011 ("[A]ll actions in this matter are stayed pending resolution by the U.S. Court of Appeals for the Fifth Circuit."); Order Granting the Trustee's Mot. to Reconsider Stay Imposed by this Court's Order of May 24, 2011 (Doc. 966), entered on June 8, 2012; Order Denying Without Prejudice Mots. Pending Prior to Stay (Doc. 969), entered on June 8, 2012; and Order Regarding Mot. to Clarify Instruction to Receiver on Payments to Former Baron Attorneys (Doc. 987), entered on June 18, 2012.

While Judge Furgeson did not engage in a detailed analysis as to whether a stay pending appeal was appropriate, the aforementioned orders make clear that all matters regarding the receivership, except perhaps for maintenance issues, were stayed pending the Fifth Circuit's resolution of the numerous appeals regarding the receivership, and this court declines to engage in a guessing game as to whether Judge Furgeson's reasons for staying such matters was administrative or merits based. Finally, the Fifth Circuit's determination that the claims by Baron's Former Attorneys had not been reduced to a judgment as of December 18, 2012, or prior to appeal to the Fifth Circuit, appears to undermine the bankruptcy court's conclusion that the May 18, 2011 Fee Order constitutes a final judgment of such claims. *Netsphere*, 703 F.3d at 308-09 ("[F]or those unpaid attorneys who had filed claims [for attorney's fees against Baron], the claims had not been reduced to judgment."). Thus, even assuming, arguendo, that the May 18, 2011 Fee Order is not void and survived the reversal of the Receivership Order, the court concludes that the record in the *Netsphere* action does not support the bankruptcy court's determination that the May 18, 2011 Fee Order is an unstayed final judgment as to the Former Attorney claims.

For all of these reasons, the court determines that Petitioning Creditors do not have standing to proceed with the involuntary bankruptcy based on the May 18, 2011 Fee Order, and reversal of the Order for Relief is appropriate.  The court's determination regarding the Order for Relief moots the parties' remaining grounds for relief and contentions.  Accordingly, the court need not address them.  As previously noted, the  court's determination regarding the Order for Relief also moots many of the other matters pending before it in the *Netsphere* action, including  the bankruptcy court's recommendation that the receivership assets should be turned over to the Trustee for the involuntary bankruptcy and Novo Point's and Quantec's motion for emergency relief and request to withdraw of the reference in the involuntary bankruptcy proceeding in response to the Receiver's October 30, 2013 motion.  Again, however, to avoid confusion, such matters will be addressed in a separate order that will be entered in the *Netsphere* action. While the receivership established in 2010 has taken on a life of its own, as aptly noted by Judge Furgeson after the Fifth Circuit issued its December 18, 2012 ruling, it was never intended to continue indefinitely.  The court will therefore direct the Receiver, in a subsequent order to follow, to wind down the receivership and  return all receivership assets to Baron or the entities from which the assets were received so that the receivership and the litigation regarding it can brought to a close.

IV.    **Conclusion**

For the reasons herein explained, the court **reverses** the bankruptcy court's June 26, 2013 Order for Relief and **remands** this case to the bankruptcy court for the limited purpose of dismissal of the involuntary bankruptcy case and consideration as to whether attorney's fees, costs, or damages should be awarded under 11 U.S.C. § 303(i).  Pursuant to Federal Rule of Bankruptcy Procedure 8014, all allowable and reasonable costs of this appeal are taxed against Appellees, and the clerk of

the court is directed to "prepare, sign, and enter" the judgment in this case in accordance with Federal Rule of Bankruptcy Procedure 8016(a).

      **It is so ordered** this 2nd day of January, 2014.

Sam A. Lindsay
United States District Judge